## Edward Czarniecki et al., Appts., *v.* H. L. Bollman, Jr. et al.

A person, about erecting a building in a thickly settled neighborhood, may be enjoined from using such building for the purpose of boiling bones and the carcasses of horses and other animals; but should not be enjoined from erecting the building.

(Argued November 3, 1887.    Decided November 11, 1887.)

October Term, 1887, No. 201, W. D., before GORDON, Ch. J.,

Cited in Evans v. Reading Chemical Fertilizing Co. 160 Pa. 227, 28 Atl. 702.

NOTE.—Injunctions will be granted to restrain nuisances when the facts are clear, and the injury threatened cannot be compensated in damages. Haugh's Appeal, 102 Pa. 42, 48 Am. Rep. 193; Pennsylvania Lead Co's Appeal, 96 Pa. 116, 42 Am. Rep. 534. So if the nuisance is one per se. Smith v. Cummings, 2 Pars. Sel. Eq. Cas. 92.    But the injunction will not be granted where the facts are doubtful until the right has been established at law.    Wood v. McGrath, 150 Pa. 451, 16 L. R. A. 715, 24 Atl. 682; Mirkil v. Morgan, 134 Pa. 144, 19 Atl. 628; Mowday v. Moore, 133 Pa. 598, 19 Atl. 626.    Nor will the court restrain where the injury is not irreparable, and the complainant can be compensated in damages.    Rhodes v. Dunbar, 57 Pa. 274, 98 Am. Dec. 221; Reading Iron Works v. South Chester, 3 Lanc. L. Rev. 107, 4 Del. Co. Rep. 455.    Nor in case no damages could be recovered.    Rhodes v. Dunbar, 57 Pa. 274, 98 Am. Dec. 221; Shell v. Kemmerer, 13 Phila. 502; Sparhawk v. Union Pass. R. Co. 54 Pa. 401.

PAXSON, STERRETT, and WILLIAMS, JJ. Certiorari to the Common Pleas No. 1 of Allegheny County to review a degree granting an injunction. Modified and affirmed.

The injunction was granted upon the bill and affidavits, no answer having been filed.

The bill was substantially as follows:

1. The orators are owners of real estate in Shaler township.

2. The locality where orators reside and own property lies along the Pittsburgh & Western railroad, near Wittmer and Glenshaw stations, known as Pine Creek valley. Said valley, by reason of natural beauty and a pure and salubrious atmosphere, has been attractive for suburban residence.

3. The defendants have recently purchased a piece of land in said locality containing about 7 acres, and have begun thereon a building or establishment for the manufacture of neat's foot oil and fertilizing material, and for otherwise converting and utilizing, by boiling, rendering, and mixing, the carcasses, entrails, and offals of animals, whether dead from disease or otherwise, putrid and refuse meat, and other materials.

4. The distance from the site of the proposed building or establishment to the land of H. Bollman, Jr., is about 330 feet; Mary Bollman, about 1,300 feet; H. L. Bollman, Jr., and wife, about 1,800 feet, etc.

5. Said building or establishment, when completed and in operation, will emit and send forth noisome and unwholesome smoke, gases, vapors, and stenches arising and resulting from boiling, melting, and mixing the carcasses, bones, extracts, and offals of animals, putrid and refuse meat, and other materials, as aforesaid; and the process of said boiling, melting, and mixing will produce great quantities of noxious, poisonous, and offensive liquid matters, scum, and refuse, which will be conveyed and carried and suffered to be drained into a certain ancient stream of pure water there situate and flowing, called Pine creek, poisoning the water of said stream and rendering it and the ice produced therefrom unfit for use.

6. That Edward Czarniecki, one of the defendants, prior to the 20th day of January, 1886, maintained and operated in Spring Garden borough, in said county, a certain building for the purpose of manufacturing and making neat's foot oil and fertilizing material therein, and for operating and maintaining

the same was, in the court of quarter sessions of said county, September sessions, 1886, indicted, tried, and convicted of establishing, maintaining, and keeping a nuisance, and was sentenced by the court to abate the same; and defendants now propose to remove the furnaces, stoves, coppers, and converters and kettles aforesaid from the said building in said Spring Garden borough to the premises purchased as aforesaid.

7. Defendants, knowing the character of the business they intended to carry on at the premises aforesaid, purchased from one Nancy Miller, concealed the same, and deceived her, and falsely represented that they intended to use the premises for the purpose of erecting thereon a leather manufactory.

8. Orators aver that if said building or establishment is erected, maintained, and operated, it will be a common nuisance.

9. If the building or establishment is erected, maintained, and operated, it will greatly injure the health and comfort of orators and their families and servants, and also the health and comfort of the public traveling on the Pittsburgh & Western Railroad and the Allegheny & Butler plank road, on which roads proposed building abuts as aforesaid.

10. If said building or establishment is erected, maintained, and operated, it will greatly depreciate the value of the property of orators and of all real estate in that neighborhood.

11. Orators charge and aver that erection and maintenance of said building or establishment will destroy the business carried on by Wittmer & Company, Eberhart & Ober, and others, of producing, storing, and selling ice along said Pine creek.

12. When orators first heard of the defendants' having purchased the said premises for the purpose aforesaid, they gave notice to the said defendants not to attempt to locate the said proposed building or establishment on said premises, which said notice the defendants have disregarded.

Affidavits were filed by both parties.

The affidavit of the defendant Czarniecki (which was supported by the affidavits of others) was to the effect that he was under contract with the cities of Pittsburgh and Allegheny to remove, from the streets and elsewhere, all dead animals and carcasses, in order to prevent injury and annoyance to the public; that the plaintiffs, instead of owning property or living within from 300 to 3,200 feet from his property, were in fact from 1,000 feet to 1½ miles away; that the few people who lived

immediately near did not object; that he intended to use all the modern machinery and chemicals known to dispose of the animals and prevent offensive and deleterious smells; that he would be able to carry on his business without injury to his neighbors; that he would not in any manner use any running stream or water, nor pollute the soil and water; that it was imperatively necessary for the health of the people of these cities that dead animals should be removed, and that the place selected was one sparsely settled and removed some distance from dwellings.

The court below rendered the following opinion:

It is fully made to appear to us that the defendant is about erecting a building in a thickly settled neighborhood for the purpose of boiling bones and the carcasses of horses and other animals. He must be restrained from erecting the building for such purposes. This is a nuisance *per se.*

It is true that the defendant alleges that he will conduct the business in such a manner as to be inoffensive, but he has failed to satisfy us that he can do so. Let an injunction issue as prayed for, on the plaintiffs' filing a bond in $3,000.

Thereupon the following decree was entered:

"And now, to wit: August 8, 1887, this cause came on to be heard on bill for injunction and affidavits, and was argued by counsel; and thereupon, upon consideration thereof, the court grants an injunction enjoining and restraining the defendants, Edward Czarniecki, William Flaccus, and George Flaccus, their servants, agents, and employees, from constructing and erecting on the premises, in Shaler township, near Wittmer station, described in said bill, a building or establishment for the purpose of the manufacturing of neat's foot oil and fertilizing material, and otherwise converting and utilizing, by boiling, melting, and mixing, the carcasses, bones, entrails, and offals of animals, whether dead from disease or otherwise, putrid and refuse meat, and other materials."

Thereupon the defendants took this writ, assigning as error the above decree and the action of the court in grating the injunction.

*W. C. Moreland* and *W. B. Rodgers,* for appellants.—If the defendant asserts positively that his acts will not cause a nui-

sance, or that it is his intention to guard against committing a nuisance, and there is no reason to discredit the assertion, the court will not interfere. Kerr, Inj. *173, *174; Wood, Nuisances, 918.

It is usual and proper, when a building or works are being erected that can only be used for a purpose that is unlawful, to restrain the erection; but when it is not made to appear that the business for which the building is intended cannot possibly be carried on without becoming a nuisance, the court will deny the injunction and leave the defendant at liberty to proceed with the erection of the building at the risk of being restrained in the use of it if a nuisance is ultimately created. Cleveland v. Citizens' Gaslight Co. 20 N. J. Eq. 201; and Atty. Gen. v. Steward, 20 N. J. Eq. 418; Sellers v. Pennsylvania R. Co. 10 Phila. 319; Baines v. Baker, 1 Ambl. 158.

In equity a decree is not of right, but of grace; and a chancellor will refuse to enjoin if, in conscience, it appears that he would do greater injury by enjoining than by leaving the party to his redress by a court and jury. Richards's Appeal, 57 Pa. 105, 98 Am. Dec. 202; Huckenstine's Appeal, 70 Pa. 102, 10 Am. Rep. 669; Dilworth's Appeal, 91 Pa. 247.

The court in this case granted the injunction, thus, despite the assertions of defendant's affidavits, determining:

1. That the business could not be possibly carried on without becoming a nuisance.

2. That it was to be carried on in a thickly settled neighborhood and near dwellings.

3. That the public interests involved did not require that the defendant be afforded an opportunity to at least demonstrate the truth of his assertions.

If the court was wrong in any one of these particulars, this decree should be reversed.

*Lyon & Shoemaker,* for appellees.—The appellants were not enjoined from erecting the building, but from erecting a building to be used for the purpose of boiling bones, carcasses of horses, etc.

There can be no doubt as to the power of the court in such cases. Rhodes v. Dunbar, 57 Pa. 286, 98 Am. Dec. 221; Kerr, Inj. 173; Bispham, Eq. 440; McCallum v. Germantown Water Co. 54 Pa. 52, 93 Am. Dec. 656; Story, Eq. 929; Hagner v.

Heyberger, 7 Watts & S. 107, 42 Am. Dec. 220; Com. v. Rush, 14 Pa. 195.

In Smith v. Cummings, 2 Pars. Sel. Eq. Cas. 92, it is said: "Numerous indictments . . . have been tried in the court of quarter sessions of this county . . . and every judge has ruled that carrying on the business of 'bone boiling' in a thickly populated part of the city or districts was a nuisance *per se.* It has been clearly shown by the authorities that persons injured have a remedy in a court of equity by injunction . . . when from its locality it is injurious to the health or comfort of those residing in its immediate vicinity." And in the same opinion: "The business of boiling up the carcasses of dead animals in a thickly populated neighborhood, which causes an offensive smell, is *per se* a nuisance.

To constitute a nuisance it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable. Catlin v. Valentine, 9 Paige, 575, 38 Am. Dec. 567. See also Bispham, Eq. 441.

PER CURIAM:

We concur with the court below, so far as its injunction restrains the defendants from using the proposed buildings as a bone-boiling establishment, for everyone knows that carrion cannot be gathered together in any populous neighborhood without being offensive. But the erection of the buildings themselves cannot be regarded as a nuisance; and we must, therefore, direct a modification of the injunction so far as it regards such erection, and no farther.

With this modification the decree is affirmed, and the appellants are ordered to pay the costs.